## OWENS *v.* GENTRY.

1. Papers, relevant to the defence, may be introduced in evidence by defendant when proved on cross-examination of a witness for the plaintiff, and before the plaintiff closes.

2. In action against a sheriff to recover damages for seizing plaintiff's crops, under a lien given by her husband, the issue was whether plaintiff had allowed her husband to manage her land in all respects as his own. *Held,* that evidence that the husband had in his own name rented a part of this land to another, was relevant.

3. If the lien was given by the husband, in his own name, with the knowledge of the wife, to secure payment for fertilizers advanced to make a crop on her land, the crop so made is bound by the lien.

4. A warrant to enforce an agricultural lien was properly issued on an affidavit by the agent of the lienee, charging that deponent believes the lienor is disposing of his crop with intent to defeat the lien, because, as deponent has been informed and believes, the lienor has sold several bales of cotton (the exact number unknown), and has applied no part of the proceeds to the lien, and after promising to make a payment on the debt on a stated day, failed to do so, although he sold a part of the crop in the meantime.

5. The judge did not err in prescribing to the jury the form of their verdict, if they found for plaintiffs.

Before WALLACE, J., Spartanburg, March, 1888.

Action in claim and delivery by Nancy Owens against L. M. Gentry and Oscar Gentry, commenced January 23, 1887.

The plaintiff, among other matters, requested his honor to charge: I. That the affidavit in evidence was not sufficient to authorize the issuance of the warrant, and such warrant was null and void. II. The sheriff, in proceeding to enforce agricultural liens, acts at his peril if he attempts to enforce a lien upon a warrant not supported by sufficient affidavit, such affidavit having been previously brought to his knowledge.

His honor charged as follows:

You understand that this is an action to recover certain corn and fodder alleged to have been taken wrongfully by the sheriff from this plaintiff here, Mrs. Owens. The plaintiff alleges that the property found and taken possession of by the sheriff was her property, and not the property of her husband, and, as she has been deprived of it, that she is entitled to have it restored to her, or she is entitled to be paid its value and damages for its detention. Now, in this case, as in all other cases that are tried before a jury, where the plaintiff demands a verdict at the hands of the jury, he must show that he is entitled to it by a preponderance of the proof. The allegation of the plaintiff here is that this is her property, and that it was taken away from her. If you are satisfied by a preponderance of the proof that this was her property, and that it was taken away from her, why then she is entitled to have it restored to her, or to have its value restored to her, and she is entitled to damages for the taking and detention. If, however, you are not satisfied that it was her property by the preponderance of the testimony, then, of course, she would not be entitled to recover; because nobody is entitled to recover in an action of property that does not belong to them. So that will be the first question you have to determine, just as to whom the property belonged. If it belonged to the plaintiff primarily, she is entitled to have it restored to her.

Something was said here about the reason of George Owens for executing a deed to this land to his wife, and in that connection I have been requested by the plaintiff to charge you that a

subsequent creditor—that is, a creditor whose debt is made subsequent to the execution of the deed—a subsequent creditor cannot complain of a gift of property by a debtor to a debtor's wife, if such transfer was previous to such indebtedness and the creditor has notice of such gift before the debt was contracted. Like most legal rules, that is only sensible and right and fair. I charge you that if a man desires to give his property to his wife, the law says he has a perfect right to do so, but he must do so subject to the right of his creditors. His creditors have the first right. It is frequently said that we must be just before we can be generous. But if a man owes no debt, or if there is no creditor complaining, or if there are no previous creditors and their claims can be satisfied by other property still remaining in the hands of the husband, after he has made a transfer of the property to his wife, then the deed to his wife is perfectly good. A subsequent creditor who has actual or constructive notice of the deed cannot complain ; the creditor of the husband, under those circumstances, knowing either actually or constructively that he had no right to look to this property that had been transferred by the husband for the payment of his debt.

I am further requested to charge, "The recording of a deed in the clerk's office is absolute and conclusive notice thereof to a subsequent creditor." That is so. As I may have had occasion to say to you before during this term of the court, the law sets its face against all sorts of fraud and imposition and deceit ; and when two men make a contract in regard to real property—make a deed—the law says you must put that on record if the purchaser desires to protect himself against subsequent contracts by the vendor in regard to that same land. That is the reason of what we call the registration laws. It is to protect a purchaser against an attempted fraud upon the part of the vendor in regard to a transfer of that same land after he has once sold it; and if the deed is put upon record, as they cannot make proclamation from the house-tops that would reach everybody, the law says that is notice to everybody—that is just the same in legal effect as if everybody in the world was notified of that transaction. It is called constructive notice. That is what it is put there for. That is what the deed is put there for, for nothing else in the

world, and it is notice to everybody. And then if anybody deals with another in regard to that piece of property, he deals with a legal imputation of knowledge that that contract had already been made by the parties whose names are to that instrument in the clerk's office.

"The sheriff has no right, without consent or against protest, to take and keep possession of and control the house of a person to store the goods of a third person levied upon by him." Of course, I charge you that. There is no doubt about that. If the sheriff has process against one man, and executes it by levying upon his property, he has got no right to go and take another man's house to put the property in. You all know that. It is not only a legal principle, but a principle of common sense. Because he has a right to go and levy upon one man's property is no reason why he could go and commit a trespass upon another man by taking possession of his house to put it in.

The plaintiff further asks me to charge you, "That an agent authorized to rent land for a landlord cannot, by contract made in his own name, subject the rent paid over to the landlord to the demand of the creditors of the agent." That is plain common sense. If a man deals with an agent, why, the person with whom the agent deals—if he does not disclose the fact that he is an agent, and is acting for somebody else—the person with whom he deals has a right to hold him responsible for any breach of the contract he makes ; or if he subsequently discovers that the agent has contracted for a principal, he has a right to hold that principal responsible for any breach of the contract that his agent made with him. Just so if one man deals with an agent, as in this case, the agent having no power to transfer the principal's title, he cannot do it, and no one can take the property of the principal for the agent's debt, unless, of course, by the consent of the principal.

So you take the case and first determine whose property this was ; and if you find that it was the plaintiff's, why then she is entitled to recover it, and she is entitled to recover damages for the detention of it to the extent of the pecuniary loss that she has sustained by being deprived of her property.

Then she goes further and says, "This property was taken

from me wilfully, in violation of my known rights, and therefore maliciously taken, and I am entitled to more than the value of the property and the immediate pecuniary loss of its taking away from me, in that I am entitled to receive a sum by way of punishment of the persons who wilfully violated my rights." You know we have had a good deal to say about that during this term. That is called punitive damages; you hear it sometimes called speculative damages; and then in the old common law books it was called smart-money, the idea being to make a man smart for the violation of another man's right.

. So I think you are in possession of the law and the facts, and you know how to form your verdict. There may be a word about that. A verdict in cases of this sort is a long one. "We find the plaintiff is entitled to the possession of the property in dispute ;" or if the property itself cannot be delivered, then so many dollars, its value, and to so many dollars by way of damages for its detention. That is the usual form of the verdict. You may try to write it out, if you please. If you don't want to do it, you can say this, "We find that the plaintiff is entitled to the property, and that it is worth so much," naming the sum, "and that she is entitled to so many dollars damages." You may put it in that form, and then when it is brought in here, the lawyers can put it in ship-shape and let you sign it again. If you find the plaintiff is not entitled to recover, you simply say, "We find for the defendant."

*Messrs. Thomson, Nicholls & Moore,* for appellant.

*Messrs. Bomar & Simpson,* contra.

March 29, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action of claim and delivery of personal property, viz., forty bushels of corn worth $30, and five hundred and fifty bundles of fodder, worth $8.25, and one lock and key, worth $1.00. The defendants answered that, as sheriff and deputy sheriff for Spartanburg, they took the property claimed by virtue of an agricultural lien warrant issued by the clerk of the court (Trimmier) at the instance of the "Ashe-

poo Phosphate Company" of Charleston, against William R. Owens, the husband of the plaintiff, and had sold the same and applied the proceeds to the agricultural lien debt aforesaid—denying that the property was seized wrongfully or maliciously or violently, but in the discharge of their official duty ; and denying that the property belonged to the plaintiff or that she had any interest therein.

The cause came on for trial before Judge Wallace, when it appeared that the property, corn and fodder, taken, was a part of the crop raised on the place upon which W. R. Owens and his family resided; that the land (113 acres) belonged to W. R. Owens, but the year before had been conveyed to his wife, the plaintiff, "in consideration of five dollars, and the services which, during their married life, she had rendered" to the grantor, her husband; that Owens, the husband, by authority of his wife, rented in his own name part of the land to one Bishop upon shares in the crop, and cultivated the remainder himself for the year 1886 ; that on May 22, (1886) W. R. Owens, in his own name, entered into an agreement in writing with the "Ashepoo Phosphate Company," and thereby promised to pay them, on or before October 15, 1886, the sum of $77.84, for fertilizers delivered, "to be used by him, the said Owens, in making crops during the current year on lands cultivated by him, known as his, and belonging to himself;" and to secure said debt, Owens gave the company a lien on all crops raised on said lands during the year 1886.

On December 29, 1886, C. S. Greenleaf, the agent of the Ashepoo Company, made an affidavit, "That deponent has been informed and believes that the said W. R. Owens is disposing of his said crops, with the intention of defeating the lien of said company, and that his reasons for his belief are as follows : that the said W. R. Owens has sold, as deponent is informed and believes, several bales of cotton raised on said lands in 1886—the deponent does not know the exact number—and has applied none of the proceeds of said sales to the payment of said lien debt; that some time in November, 1886, he promised deponent to pay at least a part of said debt, fixing the day therefor, but failed to come and make such payment; after making said promises he

sold, as deponent is informed and believes, a part of his said crop," &c. (See affidavit in Brief.) Thereupon the clerk of the court issued the agricultural warrant, under which the defendants took the property sued for.

The plaintiff requested the judge to charge: (1) That the affidavit in evidence was not sufficient to authorize the issuance of the warrant, and such warrant was null and void. (2) That the sheriff, in proceeding to enforce agricultural liens, acts at his peril if he attempts to enforce a lien upon a warrant not supported by sufficient affidavit, such affidavit having been previously brought to his knowledge. Under a full and lucid charge, the jury found a verdict "for the defendants"; and the plaintiff, having failed in a motion for a new trial, now appeals upon the following grounds of alleged error: "1. In allowing the defendant, on cross-examination of plaintiff's witness, to put in evidence the agricultural lien, warrant, and the papers attached thereto. 2. In allowing in testimony the contract between W. R. Owens and Sandford Bishop. 3. In charging that if the jury were not satisfied by the preponderance of the testimony that the property was the plaintiff's, then, of course, she was not entitled to recover. 4. In prescribing, as he did, the form of the verdict the jury should render. 5. In refusing to charge that the affidavit in evidence was not sufficient to authorize the issuance of the warrant, and that such warrant was null and void. 6. In refusing to charge that the sheriff, in proceeding to enforce agricultural liens, acts at his peril if he attempts to enforce a lien upon a warrant not supported by a sufficient affidavit, such affidavit being previously brought to his knowledge. 7. In refusing to grant the motion for a new trial."

As to the first exception, the defendants, sheriff and deputy, took the property officially under a warrant regularly lodged. The plaintiff, in order to prove her case, put up as a witness the deputy sheriff, who proved the seizure and sale, and, upon cross-examination, said, "The lien warrant I hold in my hand was my authority for making the levy." Plaintiff's attorney objected, and the judge said, "He can identify and prove a paper, and in that way put the paper in evidence. He can make out his whole case by this witness, if possible." The warrant and record under

which the sheriff acted was certainly admissible in evidence, and the only point involved was as to the time when it could be introduced. We do not see why the warrant and the whole record could not be proved on the cross-examination of one of plaintiff's witnesses. In great strictness, the matter proved was merely part of the case for the defendants, to be read and considered with their evidence; but that did not prevent the proof upon cross-examination. The English rule upon the subject prevails in this State. *Kibler* v. *McIlwain,* 16 S. C., 554; *Dillard* v. *Samuels,* 25 *Id.,* 322.

Second. We do not see why the rent note of Bishop to W. R. Owens was not admissible. The point in issue was, whether the plaintiff, Mrs. Owens, allowed her husband, W. R. Owens, as her agent, to manage the land in all respects as his own, and, as he said himself, "just the same as if it belonged to him"; to rent it to others, or to cultivate it himself. Upon that issue it was "relevant" to prove that W. R. Owens rented to another, in his own name, a part of the very land he had conveyed to his wife, and a part of which, with the concurrence of his wife, he cultivated himself. He could not cultivate the land as a lessee, and at the same time deny his lien on the crop for fertilizers.

Third. We do not think it was error to charge, "that if the jury were not satisfied by the preponderance of the testimony that the property was the plaintiff's, then, of course, she was not entitled to recover." As a general rule, certainly, parties are only allowed to recover property which belongs to them. We do not think this case analogous to that of the chimney sweeper's boy, who found a jewel, and was held to be entitled to recover it in an action of trover against all but the true owner. There was no clear and exclusive possession in the plaintiff here. The title of the land was in her name, but she lived with her husband and permitted him to make a crop upon it on his own account; and the jury may very well have concluded that the crop was in the possession of the husband, who made it, and in doing so had placed a lien upon it for fertilizers. He cannot be permitted to give a lien upon the crop as his own property with the knowledge of his wife, and then claim that it belongs to her, and she never authorized that contract.

32—30

Fourth. "That the alleged lien warrant was wholly irregular, insufficient, and void, and could not protect the defendants in acting under it, and their proceedings were at their peril." It might be enough to say that this question was not considered by the judge below, although he was requested to charge upon the subject; for the reason, as we suppose, that the defendant himself did not make the objection, but it was made by a stranger to that proceeding. If, however, W. R. Owens himself were before the court and making the objection, we do not think it could be sustained. The affidavit of Greenleaf, the agent, was never controverted. It was very full, giving his reasons for the belief, that the said W. R. Owens "is disposing of his said crop with the intention of defeating the lien of the said company." See *Monday* v. *Elmore*, 27 S. C., 131, in which the Chief Justice said: "It must be remembered that this was a proceeding upon an agricultural lien, and while this lien law does provide that the affidavit for a warrant of seizure in such cases should "conform as nearly as may be" to the practice in ordinary attachments, yet there is this material distinction between the two: In attachment cases, there is no lien on the property attached, which it is intended to enforce, and consequently the mere disposition of the property might not, in itself, perhaps, be a sufficient statement, showing the intent to defraud. But in agricultural contracts there is a lien, and a statement, that the debtor is disposing of his property to defeat this lien, contains facts bearing directly on the intent," &c.

Fifth. We are unable to see that the judge erred "in prescribing," as he did, the form of the verdict, and in refusing a motion for a new trial. The verdict in an action "for claim and delivery of personal property," is somewhat long and out of the usual course, and to all but lawyers needs to be explained. We think the judge did right in giving to the jury the form, and that the form given was correct.

We cannot say that he committed error of law in refusing to grant a new trial.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.